UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-161-JBT

SKY CAST, INC.,                                                                                    PLAINTIFF

V.                                        **MEMORANDUM OPINION**

GLOBAL DIRECT DISTRIBUTION, LLC, ET AL.,                                      DEFENDANTS

* * * * * * * * * *

## I.  INTRODUCTION

Plaintiff Sky Cast, Inc. ("Sky Cast"), a foreign corporation with its principal place of business in Guelph, Ontario, Canada, brings this action against defendants Global Direct Distribution, LLC ("Global"), a limited liability company with its principal place of business in Lexington, Kentucky; David J. Dixon ("Dixon"), a managing member of Global; and Raymond A. Sjogren ("Sjogren"), a managing member of Global, for breach of contract, alleging that Global is indebted to it in the principal amount of $83,203.78 for concrete light poles that Sky Cast made and delivered to Global's customer in Florida in 2006.  Sky Cast also asserts claims against the defendants for unjust enrichment and fraud.

Sky Cast seeks judgment in the amount it is owed under its contract with Global, prejudgment interest, post judgment interest, and its costs and attorney's fees.

In response, Global has counterclaimed, alleging that Sky Cast breached their contract by failing to deliver the concrete light poles in question as Sky Cast had agreed to do and that Global sustained damages by Sky Cast's failure to perform the contract in a timely manner.  Global also asserts claims for negligent misrepresentation and fraud and concealment.  Global seeks unspecified compensatory damages, postjudgment interest, its costs and attorney's fees.

This matter is presently before the court on (1) plaintiff's motion for partial summary judgment on its breach of contract claim and on the defendant's counterclaim for breach of contract, (2) defendant's motion for partial summary judgment on its claim for negligent misrepresentation,

and (3) the motion of the individual defendants Sjogren and Dixon for summary judgment on all claims asserted against them individually.  Plaintiff's motion for partial summary judgment on its breach of contract claim and on the defendant's counterclaim for breach of contract and defendants' motion for partial summary judgment on their claim for negligent misrepresentation have been fully briefed and are ripe for review.  Plaintiff has filed no response to the motion of the individual defendants for summary judgment on all claims, and the time for responding thereto has expired; therefore, this motion is also ripe for review.

## II.  FACTUAL BACKGROUND

For approximately three years prior to the events giving rise to this lawsuit, Sky Cast, a manufacturer of concrete light poles, sold concrete light poles and related products to Global[1] for use in various construction projects in the southeastern United States.[2]  Global supplied concrete light poles to Tradition, one of Global's customers in Florida, for use in its construction/development projects.

During the period of time prior to April of 2006, a pattern or a course of dealing had developed between Sky Cast and Global in relation to Global's purchase of light poles from Sky Cast.  Generally, representatives from Global would contact members of Sky Cast's sales team and talk with them about upcoming projects on which Global planned to bid. After exchanging information including job specifications and costs, Global would submit a bid on the project.  If Global were awarded the project, then Global would send a purchase order to Sky Cast.  *See*

---

[1] At that time, Global was a limited liability company based in Palm City, Florida, and Tradition Development Company, LLC, and its affiliated companies in Florida ("Tradition") was one of Global's customers in Florida.  In November of 2006, Global was voluntarily dissolved in Florida and is now a limited liability company in Kentucky.

[2] While this action appears to stem from the Landings development project, one of the Purchase Orders in question predates the Landings project, which did not materialize until late April of 2006, and seems to concern a different project.  The Purchase Order that predates the Landings project is dated February 16, 2006, and is in the amount of $46,050.00.  *See* Exhibit A to plaintiff's Complaint [DE #1].  Apparently, there is a balance also owed on this 2/16/06 Purchase Order.

<u>Affidavit of Raymond A. Sjogren</u> - Exhibit A to <u>Global Direct's Motion for Summary Judgment</u> [DE #24]. Sky Cast would then produce the items ordered and ship them to the project site pursuant to its agreement with Global. In April 2006, Sky Cast and Global had just completed a project in Florida, and the parties then engaged in preliminary discussions concerning a new job in the Landings development in Florida. Global had been awarded a contract by Tradition to supply the light poles for installation in the parking lot at a new Target store location in the Landings development.

Subsequently, after all of the details concerning the specifications had been provided to Sky Cast, on April 20, 2006, pursuant to the practice and custom that had developed between Global and Sky Cast, Global sent a Purchase Order to Sky Cast for various quantities of three different types of light poles for the Target store in the Landings development, which Sky Cast was to ship to the project site in Port St. Lucie, Florida. The total amount of this Purchase Order was $115,658.30. The purchase order also requested Sky Cast to provide wind-load certifications and requested that one truck load of light poles (*viz.*, 20 light poles) be shipped within two weeks.[3]

By e-mail dated April 25, 2006, Sky Cast advised Global that it could have two loads leaving on Monday afternoon (presumably May 1, 2006) to arrive mid-week of that week. (<u>See</u> e-mail from Romi Pop to Ray Sjogren, Exhibit C to <u>Global Direct's Motion for Summary Judgment</u> [DE #24]. Apparently, on May 4, 2006, Sky Cast shipped two (2) separate loads of 25 light poles (for a total of 50 light poles) to Town Park in Port St. Lucie, Florida, consistent with Romi Pop's e-mail dated April 25, 2006. <u>See</u> Exhibit 4 to Sky Cast's response to Global's motion for summary judgment [DE #31]. However, as explained in greater detail below, it is unclear whether this shipment of light poles was for the Landings project or whether it was for a different project.

[3] Global states that based on the parties' past practice, Sky Cast was to have shipped a load of light poles (approximately 20 poles) to the project every two weeks, following the first shipment which should have been made in early May of 2006. The Purchase Order dated April 20, 2006, states: "One truck load (20) to be shipped within 2 weeks ARO this date." However, this Purchase Order does not specify that a truck load of poles is to be shipped every two weeks thereafter.

Additionally, during the course of performing this contract, Sky Cast encountered problems with production[4] and was unable to ship a truck load of poles to the Landings project site every two weeks, consistent with the customary practice previously followed by Sky Cast and Global on this type of construction project.  Nevertheless, Sky Cast ultimately supplied the products and/or services requested by Global in the four Purchase Orders at issue (Purchase Orders dated February 16, 2006, April 20, 2006, July 19, 2006, and October 13, 2006), and Global accepted the products and/or services provided.

Thereafter, Sky Cast sent invoices to Global for these products and/or services.  The invoices specify a payment term of 30 days.  *See* Exhibit B to Complaint [DE #1].  Sky Cast asserts that Global has failed to pay these invoices in full and is indebted to it in the principal amount of $83,203.78.

### III.  THE MOTIONS FOR SUMMARY JUDGMENT

**A.    Standard for Summary Judgment**

In *Menuskin v. Williams*, 145 F.3d 755 (6th Cir. 1998), the Sixth Circuit reiterated the standard to be employed when considering a motion for summary judgment, as follows:

> .  .  .  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©).  In applying this standard, we view the evidence so that all justifiable inferences are drawn in favor of the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

*Menuskin*, 145 F.3d at 761.  *See also Street v. J. C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989).

With this standard in mind, the court will proceed to Sky Cast's motion for partial summary judgment on its breach of contract claim and on Global's counterclaim for breach of contract.

---

[4] In answering Global's Interrogatory No. 15, Sky Cast's response, in part, states:  "There was a two-week partial shutdown at the plant due to a shift being on vacation.  Additionally, there was a gas leak that closed the plant for two days, and there were inexperienced employees working on a certain shift."

**B.**     **Sky Cast's motion for partial summary judgment**

In support of its motion for summary judgment on its breach of contract claim and on Global's counterclaim for breach of contract, Sky Cast contends that the contract at issue is governed by Article 2 of the Uniform Commercial Code, codified in Kentucky as Chapter 355 of the Kentucky Revised Statutes.  More particularly, Sky Cast submits that since it supplied the goods in question and that since Global accepted these goods, this contract is controlled by KRS 355.2-606 and KRS 355.2-607.  KRS 355.2-607, provides that "a buyer must pay at the contract rate for any goods accepted," and KRS 355.2-606(1)(b) specifies that "[a]cceptance of goods occurs when the buyer . . . fails to make an effective rejection."  Based on these undisputed facts and the applicable law, Sky Cast asserts that it is clear that Global is in breach of contract and that it is entitled to summary judgment on its breach of contract claim because (1) Sky Cast supplied the light poles specified in the Purchase Orders (albeit untimely), and (2) Global accepted the light poles, made no efforts to reject the light poles, and used these light poles in the construction project.

With this claim resolved, Sky Cast notes that the only other contract issue remaining is whether it was in breach by the delays in shipment of the light poles and, if so, whether Global is entitled to a set-off against the contract price for damages resulting from any breach by Sky Cast. Sky Cast points out that pursuant to KRS 355.2-607(3)(a), "where tender has been accepted the buyer must within a reasonable time after he discovers . . . any breach notify the seller of breach or be barred from any remedy."  Based on this provision, Sky Cast argues that if Global desired to deduct any damages for Sky Cast's breach of contract from the contract price, it was required to do the following:  (1) notify Sky Cast of its breach within a reasonable time after discovering the breach, and (2) notify Sky Cast of its intent to deduct damages resulting from the breach.  Sky Cast contends  that since Global did not follow the foregoing procedure, it is now barred from any remedy.  Sky Cast states that prior to the filing of this action, Global never notified it that Global considered Sky Cast to be in breach of contract and that it intended to offset its alleged damages against the contract price.  For these reasons, Sky Cast also contends that Global has waived its

claim for damages under KRS 355.2-607 and that it is entitled to summary judgment on Global's counterclaim for breach of contract.

In opposing Sky Cast's motion for summary judgment on its breach of contract claim against Global and on Global's counterclaim for breach of contract, Global submits that since the contract in dispute is between parties in different nations, it is governed by the United Nations Convention on Contracts for the International Sale of Goods ("CISG") rather than by Article 2 of the Uniform Commercial Code, as urged by Sky Cast. Therefore, Sky Cast is not entitled to summary judgment on its breach of contract claim against Global or on Global's counterclaim for breach of contract.

### Discussion/Analysis

Since Sky Cast is a foreign corporation with its principal place of business in Guelph, Ontario, Canada, and since Global is a company with its principal place of business in Lexington, Kentucky, U.S.A., it appears that the contract in dispute is contract is controlled by the CISG, which governs a contract for the sale of goods between parties whose principal places of business are in different nations if those nations are signatories to the treaty. *BP Oil International, Ltd. v. Empresa Estatal Petroleos de Ecuador(PetroEcuador)*, 332 F.3d 333, 336 (5th Cir. 2003). In this case, both the United States of America, where Global's principal place of business is located, and Canada, where Sky Cast is located, are signatories to the CISG. Although the parties to a contract normally controlled by the CISG may exclude the applicability of the CISG to their contract, any such exclusion must be explicit. *See PetroEcuador*, 332 F.3d at 337. In this case, there is no indication that the parties elected not to have the CISG apply to their contract.

The CISG preempts state law contract claims. *Asante Technologies, Inc. v. PMC-Serra, Inc.*, 164 F.Supp.2d 1142, 1151-1152 (N.D. Cal.2001). *See also* William S. Dodge, Teaching the CISG in Contracts, 50 J. Legal Educ. 72, 72 (March 2000) ("As a treaty the CISG is federal law, which preempts state common law and the UCC."); David Frisch, Commercial Common Law, The United Nations Convention on the International Sale of Goods, and the Inertia of Habit, 74 Tul. L. Rev. 495,

503-04 (1999) ("Since the CISG has the preemptive force of federal law, it will preempt article 2 when applicable.").

Since this contract concerns the sale of goods between parties in different countries (Canada and the United States of America), since these two countries are signatories to the CISG, and since there is no indication that the parties opted out of the CISG, the court concludes that the CISG governs this contract and that it preempts the applicability of Article 2 of the UCC to this transaction for the sale of goods that ordinarily would be controlled by Article 2 of the UCC.  However, even though the CISG, rather than Article 2 of the UCC, controls this contract, the court also concludes that that fact does not operate to defeat Sky Cast's motion for summary judgment on its breach of contract claim, and the court further concludes that based on the undisputed facts of this case, at least as to liability, Sky Cast is entitled to summary judgment on its breach of contract claim.  This conclusion is based on the fact that Sky Cast supplied the goods that were purchased by Global in the various Purchase Orders, that Global accepted these goods and made no efforts to reject these goods, that these goods were used in the construction project, and that Global failed to pay Sky Cast in full for the total amount of the invoices Sky Cast sent to Global concerning these goods. Therefore, liability on Sky Cast's breach of contract claim against Global is no longer an issue.  The only remaining aspect of Sky Cast's claim for breach of contract is the amount of damages to which Sky Cast is entitled.

**Global's counterclaim for breach of contract**

Sky Cast also contends that it is entitled to summary judgment on Global's counterclaim for breach of contract because Global is barred from deducting from the balance owed on the contract price for any damages it may have sustained by reason of Sky Cast's delay in shipping the light poles to the construction project.  In support of this argument, Sky Cast relies on Article 2 of the UCC and asserts that since Global did not follow the foregoing procedure, set out in detail above, Global has waived any claim it might have had under Article 2 of the UCC for damages and is now

barred from any remedy.  Therefore, it is entitled to summary judgment on Global's counterclaim for breach of contract.

Sky Cast's motion for summary judgment on Global's counterclaim for breach of contract is premised on Article 2 of the UCC, which is not applicable to this contract.  As previously stated, the CISG governs this contract.  Article 39 of the CISG contains the following provision concerning lack of conformity of the goods:

### Article 39

(1) The buyer loses the right to rely on a lack of conformity of the goods if he does not give notice to the seller specifying the nature of the lack of conformity within a reasonable time after he has discovered it or ought to have discovered it.

(2) In any event, the buyer loses the right to rely on a lack of conformity of the goods if he does not give notice thereof at the latest within a period of two years from the date on which the goods were actually handed over to the buyer, unless this time-limit is inconsistent with a contractual period of guarantee.

See CISG, Article 39.

Although Global has not asserted as a defense that the goods were non-conforming, *per se*, Global impliedly asserts that the goods were non-conforming because they were not shipped within the time-frame customarily followed by the parties on contracts for similar construction projects, and that it sustained damages by the delay in shipments.  Thus, Article 39 of the CISG is applicable by analogy.  Assuming the light poles were non-conforming because of the delay in shipments, under Article 39, it appears that Global had two years from the date of delivery of the light poles to the construction project within which to give Sky Cast notice that the goods were non-conforming.

In this case, the exact dates of Sky Cast's shipments of the light poles to the construction project are not clear from the record as it presently stands.  However, all light poles were shipped to the construction project in the summer and early fall of 2006, and Sky Cast sent Global invoices to Global for these shipments, presumably at the time the light poles were shipped or shortly thereafter.  Of the twelve (12) invoices attached to Sky Cast's complaint, two are dated August 14, 2006, three are dated August 31, 2006, three are dated September 14, 2006, and four are dated

October 4, 2006. Thus, under Article 39 of the CISG, Global had a two years thereafter in which to notify Sky Cast that the light poles were non-conforming goods. Therefore, Global's two-year statute of limitations would not expire, at the earliest, until August 14, 2008. Global's counterclaim herein was filed on July 26, 2007. Consequently, the court concludes that under Article 39 of the CISG, Global's notice to Sky Cast that its goods were non-conforming was timely.

Nevertheless, even though Global's notice to Sky Cast that there was a problem with its goods, in the sense that Global considered the late delivery of the goods to have violated the terms of their contract, was timely, such notice does not mean that Global will or should prevail on its counterclaim for breach of contract. Article 74 of the CISG provides, in part, that a party can recover for damages for breach of contract "equal to the loss, including loss of profit, suffered by the other party as a consequence of the breach." Global claims that it was damaged by Sky Cast's late shipments of the light poles in that (1) in order to appease its customer, Tradition, it had to pay the storage charges of certain materials that had to be placed in storage awaiting the delivery of the light poles, and (2) it has also incurred a loss of profits in that its volume of business with Tradition has declined as the result of this situation. As to proof of its damages, Global advises that its out-of-pocket expenses for the storage charges were $13,156.02 and that it lost profits in the amount of $146,885.76.[5] However, at this juncture, Global has come forward with no concrete proof of its loss of profits.

Consequently, for all of the foregoing reasons, the court concludes that neither Sky Cast nor Global is entitled to summary judgment on Global's counterclaim for breach of contract.

**C.      Global's motion for partial summary judgment**

In support of its motion for summary judgment on its counterclaim for negligent misrepresentation, Global relies on § 552 of the Restatement (Second) of Torts, which was adopted in Kentucky in 2004 in *Presnell Construction Managers, Inc. v. EH Construction, LLC*, 134 S.W.3d

---

[5] See Affidavit of Raymond A. Sjogren, p. 3, attached to Global's motion for partial summary judgment [DE #24-4].

9

575 (Ky. 2004).  Global contends that under § 552 of the <u>Restatement (Second) of Torts</u>, it is entitled to recover for pecuniary loss resulting from the false information on which it relied that was conveyed to it by Sky Cast concerning the deliveries of the light poles.  Global also points out that while the CISG preempts Article 2 of the UCC in respect to the breach of contract claim, it does not preempt state law tort claims.  Additionally, Global notes that Article 74 of the CISG provides for the award of lost profits.

In response, Sky Cast contends that Global's motion for partial summary judgment on its claim for negligent misrepresentation should be denied because Global has failed to produce any evidence of a negligent misrepresentation by Sky Cast and/or any evidence that it relied on any such misrepresentation.  Sky Cast also asserts that Global has provided no concrete evidence as to its damages and that the evidence it has submitted concerning its loss is speculative.  For all of these reasons, Sky Cast submits that there are genuine issues of material fact concerning Global's claim for negligent misrepresentations and that Global's motion for partial summary judgment on this claim must be denied.

### Discussion/Analysis

In *Presnell Construction Managers, Inc. v. EH Construction, LLC*, *supra*, the <u>Restatement (Second) of Torts § 552</u>, was adopted as the law in Kentucky. § 552 concerns the tort of negligent misrepresentation and provides, as follows: "One who, in the course of his business . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.  In adopting § 552, the Kentucky Supreme Court held that "[w]e agree that privity is not necessary to maintain a tort action, and, by adopting § 552, we agree that the tort of negligent representation defines an independent duty for which recovery in tort for economic loss is available."  *Id.*

Thus, negligent misrepresentation is a tort claim completely different from a claim for breach of contract.  Being a tort claim, the court concludes that it is not controlled by the CISG, which only

10

concerns the sales of good between merchants in different countries, and that since this action is a diversity action, Global's claim for negligent misrepresentation is controlled by state law.

Global's claim for negligent misrepresentation is based on the premise that Sky Cast provided it with false information concerning the delivery of the light poles.  In support of this claim, Global relies on the following three e-mails from Romi Pop at Sky Cast to Global: (1) an e-mail dated April 25, 2006 to Ray Sjogren, (2) an e-mail dated June 7, 2006 to Ray Sjogren, and (3) an e-mail dated June 8, 2006 to Dave Dixon.  These three e-mails are examined in greater detail, as follows:

**1.**      **the e-mail dated April 25, 2006 to Ray Sjogren**

In responding to an e-mail from Ray Sjogren to Ron and Romi dated April 25, 2006, inquiring about the 50 poles shipping for Town Park, Romi Pop stated:

> Hi Ray,
> If it's OK, we can have two loads leaving on Monday afternoon, for mid-week arrival.  Would that work?
>
> Please let me know.
> Thanks,
> Ron

See Exhibit C to Global's Motion for Summary Judgment - DE #24.

Exhibit 4 to Sky Cast's response to Global's motion for summary judgment [DE #31] reflects that on May 4, 2006, in Shipping Order Nos. 30277 and 30278, Sky Cast shipped 50 light poles (two loads of 25 poles each) to Town Park.  Thus, this e-mail does not appear to contain false information.  Based on a review of this e-mail and Exhibit 4 to Sky Cast's response to Global's motion for summary judgment, it appears that Sky Cast shipped 50 light poles to Town Park in Port St. Lucie, Florida, on May 4, 2006, consistent with Romi Pop's e-mail dated April 25, 2006.

However, the inquiry does not end here.  Ray Sjogren's e-mail to Ron Wagen and Romi Pop at Sky Cast dated April 25, 2006, inquiring about the shipment of 50 light poles concerns the shipping of light poles for Town Park.  Exhibit 4 to Sky Cast's response to Global's motion for summary judgment reflects that on May 4, 2006, 50 light poles were shipped to Town Park at the

11

following address: 11209 S.W. Springtree Terrace, Port St. Lucie, FL 34987. This Delivery Notice (Exhibit 4) identifies this project as Project No. 06-19, which appears to be the Town Park project, which also appears to be a project different from the Landings project, which is identified by Sky Cast in its invoices to Global as Project No. 06-74 with the following shipping address: 10521 SW Village Center Drive, Port St. Lucie, FL 34987. See Plaintiff's Exhibit B to Complaint [DE #1].

Thus, it is unclear whether Ray Sjogren's e-mail to Ron Wagen and Romi Pop at Sky Cast dated April 25, 2006, inquiring about the shipment of 50 light poles and Romi Pop's response thereto on April 25, 2006, concerned the light poles that were to be shipped to the Landings project. If Project No. 06-19 and Project No. 06-74 concern the same project and/or if the Town Park project and the Landings project are one and the same, then it is clear that Romi Pop's e-mail to Ray Sjogren dated April 25, 2006, concerned the light poles that were to be shipped to the Landings project, that those light poles were in fact shipped as Sky Cast represented they would be, and that these light poles were shipped to Port St. Lucie, Florida, on May 4, 2006.

However, it further appears from the record that the 50 light poles Sky Cast shipped on May 4, 2006, did not concern the Landings project, as evidenced by an e-mail from Dave Dixon to Romi Pop at Sky Cast dated June 6, 2006, which states, as follows:

> Romi,
>
> Can you give me an update on delivery for the 1st release on the Landing job? We need those poles ASAP. I am still waiting for the prints on the balance of the poles to advise you on the GFI and hand hold placement. Please send good news!

See Exhibit H to Global's Motion for Summary Judgment - DE #24.

Additionally, on June 7, 2006, Ray Sjogren sent an e-mail to Romi Pop and Ron Ragwen at Sky Cast, stating:

> We really need a truck load of poles immediately for the Tradition Landing Job. Can you advise on where you are on that order?

See Exhibit J to Global's Motion for Summary Judgment - DE #24.

On June 7, 2006, Romi Pop responded with the following e-mail:

Gents, the first full load of poles will be ready to ship on week of June 19/06.

Regards,
Romi

<u>See</u> Exhibit J to <u>Global's Motion for Summary Judgment</u> - DE #24.

Consequently, it appears that while Sky Cast shipped 50 poles to Port St. Lucie, Florida on May 4, 2006, the record is not entirely clear whether this shipment of light poles concerned the Landings project. Therefore, this e-mail does not support Global's motion for summary judgment on its negligent misrepresentation claim.

**2.      the e-mail dated June 7, 2006 to Ray Sjogren**

To reiterate, on June 7, 2006, Ray Sjogren sent Romi and Ron at Sky Cast an e-mail advising that Global really needed a truck load of poles immediately for the Tradition Landing Job and requested a status report on where Sky Cast was on that order. In response to this e-mail, Romi Pop stated:

Gents, the first full load of poles will be ready to ship on week of June 19/06.

Regards,
Romi

<u>See</u> Exhibit J to <u>Global's Motion for Summary Judgment</u> - DE #24.

**3.      the e-mail dated June 8, 2006 to Dave Dixon**

In response to Romi Pop's e-mail dated June 7, 2006, on June 8, 2006, Dave Dixon at Global sent Romi Pop an e-mail at Sky Cast, which stated in part, as follows:

. . . Please tell me you have the 1st truck load going out this week. This order is 8 weeks old and we are getting much heat on this. Please get with Ron if you are having a problem with production. He said at time of order that we could get 1st truck out very QUICKLY. Please advise us today as we need to respond to our customer NOW.

In response to this e-mail, on June 8, 2006, Romi stated:

Gentlemen, please be assured that we have our full resources working on this order. The best that we can do is shipping at the end of next week, and we will have approximately 17 poles at that time.

Thank you for your patience and understanding,

13

Romi

See Exhibit K to Global's Motion for Summary Judgment - DE #24.

It is clear from the foregoing e-mails that they concerned the Landings project. Summarizing these e-mails, on June 7, 2006, Global advised Sky Cast that they "really need a truck load of poles immediately for the Tradition Landing Job," and requested a status report on those poles. Sky Cast responded that it had encountered some production problems, but that it expected to be able to have a full load of poles ready to ship on the week of June 19, 2006. The record reflects that on June 19, 2006, Sky Cast shipped a load of fourteen (14) poles and that on July 7, 2006, Global received another shipment containing twenty-one (21) poles.

Consequently, the court concludes that these two e-mails in question, *viz.,* the e-mail dated June 7, 2006 to Ray Sjogren, and the e-mail dated June 8, 2006 to Dave Dixon, do not contain any false information. Therefore, these two e-mails do not support Global's motion for summary judgment on its claim for negligent misrepresentation.

For these reasons, the court also concludes that Global is not entitled to summary judgment on its counterclaim for negligent misrepresentation.

**D.    The motion for summary judgment filed Sjogren and Dixon on Sky Cast's fraud claim**

Defendants Sjogren and Dixon have moved for summary judgment on plaintiff's claim for fraud asserted against them individually concerning representations they made to state officials in Florida in order to effectuate the dissolution in Florida of Global Direct's predecessor, Global Direct Distribution, LLC, a limited liability company in Florida. [DE #22].

Sky Cast has filed no response to the motion of defendants Sjogren and Dixon for summary judgment, and the time for responding thereto has expired. Thus, this matter is ripe for review.

### Discussion/Analysis

Defendant Global is presently a limited liability in Kentucky, with its principal place of business in Lexington, Kentucky. However, Global is successor in interest to Global Direct Distribution, LLC, in Palm City, Florida, which was dissolved in Florida on or about November 28,

14

2006.  See Exhibit "C" to Complaint [DE #1].  In the Articles of Dissolution for a Limited Liability Company filed with Florida officials, Global's managing members, Sjogren and Dixon, stated that the Global entity in Florida was being dissolved because the "company has relocated to Kentucky and has no physical location in Florida," that dissolution was approved on November 21, 2006, that all debts, obligations and liabilities of the limited liability had been paid or discharged, and that there were no suits pending against Global in any court.  *Id.*  Subsequently, defendant Global became a Kentucky limited liability company on or about December 4, 2006.

Sky Cast asserts that in effectuating the dissolution of Global Direct Distribution, LLC, in Palm City, Florida, defendants Sjogren and Dixon fraudulently represented to Florida officials in November of 2006, that all of Global's debts, obligations and liabilities had been paid or discharged, when in fact Global was indebted to Sky Cast at that time in the principal amount of $83,203.78 stemming from the light poles Sky Cast shipped to the Landings project, which Global accepted and which were used in the Landings project.

To establish a fraud claim in Kentucky, a claimant must prove, by clear and convincing evidence, the following six elements: (a) a material representation, (b) which is false, (c) and which is known to be false or made recklessly, (d) made with inducement to be acted thereon, (e) which is acted thereon, and (f) causes injury.  *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999).

Assuming the truthfulness of Sky Cast's claim that defendants Sjogren and Dixon made fraudulent statements to state officials in Florida in order to effectuate the dissolution of Global Direct Distribution, LLC, in Florida, which would establish the first three of the six elements required to state a viable fraud claim in Kentucky, Sky Cast has not come forward with any evidence to establish the last three elements required to establish a fraud claim, *viz.,* that these fraudulent statements (i) were  made to induce action thereon by Sky Cast, (ii) were, in fact, acted thereon by Sky Cast, and (iii) caused injury to Sky Cast.  This conclusion is based on the chronology of events occurring between Sky Cast and Global, set out below:

15

1.  The agreements between Sky Cast and Global that comprise the contract in question occurred in April of 2006, prior to the allegedly fraudulent statements made in November of 2006.

2. Sky Cast's invoices to Global dated October 4, 2006, are the last documentation regarding Sky Cast's claim; these invoices predate the dissolution of Global Direct Distribution, LLC, in Florida, which was not dissolved until November 28, 2006, nearly two months after the date of the Sky Cast's last invoice to Global.

Any fraudulent statements that were made to Florida officials were made to induce action thereon not by Sky Cast, but by Florida officials by approving the dissolution of Global Direct Distribution, LLC, the Florida entity.  Assuming that these statements were fraudulent and that Florida officials acted thereon by allowing Global Direct Distribution, LLC, to be dissolved in Florida, Sky Cast has not established that it was induced to act by these fraudulent statements and/or that it was injured by these fraudulent statements.  It is clear that the dissolution of Global Direct Distribution, LLC, in Florida, in November 2006, had no bearing on any agreement made between Sky Cast and Global at any time prior thereto.  In short, Sky Cast simply cannot claim to have relied to its detriment on an event that had not occurred when its claim for breach of contract arose.

Thus, Sky Cast has not established that it relied to its detriment on the November 28, 2006, dissolution filing or that it suffered any damage as a result of any statement contained in the dissolution filing.  Based on the foregoing, the court concludes that there is no genuine issue of material fact and defendants Sjogren and Dixon are entitled to judgment as a matter of law.

An Order and Judgment in accordance with this Memorandum Opinion  will be entered on the same date herewith.

This 18th day of March, 2008.



Signed By:
*James B. Todd*
United States Magistrate Judge

16